### (Surrogate's Court, Herkimer County. January, 1902.)

1. GUARDIAN—ACCOUNTING BY EXECUTOR.

    A guardian appointed in 1865 for a ward born in 1857 had never filed an inventory nor an account, and died in 1887, and his executor qualified in 1888. *Held*, that a special proceeding by the ward in 1901 against the executor to make him account for money alleged to have been received by the guardian in 1865 was barred by the lapse of 10 years after 1878, at which time the ward became of age and had a right to compel an accounting.

2. SAME—PRESUMPTION OF PAYMENT.

    Where a guardian was appointed in 1865, and died in 1887, and the ward became of age in 1878, in an action against the guardian's executor in 1901 a presumption of payment to the ward is created.

In the matter of the judicial settlement of John G. Lewis, executor of Harris Lewis, deceased, guardian of Etta Baillet. Proceedings dismissed.

J. A. Steele, for petitioner.

E. La Grange Smith, for executor.

DEVENDORF, S. On the 9th day of October, 1865, Harris Lewis, of the town of Schuyler, in the county of Herkimer, was appointed by the surrogate of said county guardian of the property of the petitioner herein, Etta Fish-Baillet. So far as the records of the surrogate's office disclose, nothing further than to qualify as such guardian was ever done by the said Lewis. He never filed an inventory of the property or statement in any form of his acts as such, and never asked for or obtained his discharge. On the 26th day of October, 1887, the said guardian died. He left a last will and testament, of which his son John G. Lewis, the answering party herein, was made the sole executor. He qualified as such February 6, 1888, and pursued the course of his father, and never rendered in any form or manner an account, or had a judicial settlement as such executor. The petitioner herein was born June 27, 1857; hence she became 21 years of age in 1878, or upwards of 9 years before the death of her guardian. The petition was filed February 21, 1901, herein, to compel the accounting of the executor of the deceased guardian; therefore this proceeding was instituted over 13 years after the guardian's death, and more than 22 years after the ward became of age. At the return of the citation the executor of the deceased guardian filed an answer and interposed objections to the proceedings, and asked their dismissal on the ground that he was in no way accountable to the petitioner, and that the guardian's estate was in no way obligated to her, and that she had been fully paid, and also interposed a plea of the statute of limitations. After reserving the question whether the right to compel an accounting herein had been lost by the statute of limitations, evidence was taken from which it can ·be inferred that the guardian received, December 1, 1865, $295.76, funds belonging to his ward. As to all subsequent transactions as to these funds and the management of the estate the evidence and the records are en-

tirely silent. Section 2606 of the Code of Civil Procedure provides that, where a guardian dies, the surrogate's court has the same jurisdiction upon the petition of the guardian's ward to compel the executor or administrator to account which it would have against the decedent if his letters have been revoked by a surrogate's decree; hence the decisions of Andrade v. Cohen, 32 Hun, 225, and Farnsworth v. Oliphant, 19 Barb. 30, holding that the surrogate's court cannot compel the representatives of a deceased guardian to account and pay over a balance found due from him are, in view of the language of said section, no longer controlling authorities, and application for a compulsory accounting may be made as soon as the executor of the deceased guardian is appointed. In re Wiley, 119 N. Y. 642, 23 N. E. 1054. Therefore the petitioner herein not only had a right, as soon as she arrived at age in 1878, to ask for and compel an accounting on the part of her guardian, but immediately upon the appointment of the executor of the deceased guardian, February 6, 1888, she had the right to call upon him for an account of the doings and acts of the deceased guardian, if she were not then already precluded by the statute of limitations. The petitioner testifies that she had always known that Harris Lewis was her guardian, but insists that she did not know that this particular money ever came to his possession as such guardian, and says she believed it was held by her uncle; but under the showing in this proceeding I do not think that position can aid her, for I think her claim herein is barred by the statute of limitations, and that after the lapse of such a great number of years as have passed in this case since the ward became of age the presumption of payment follows. In Re Neilley, 95 N. Y. 382, it was held that it is only where an actual, continuing, and subsisting trust existed that a trustee is precluded from setting up the statute of limitations. Kane v. Bloodgood, 7 Johns. Ch. 90, 11 Am. Dec. 417, was recognized in that case as an authority. The well-considered case of Kane v. Bloodgood refers to the equitable rule under which courts of equity reject stale claims independent of the statute of limitations, and cites one case where a bill was filed against an executor for an account, and, there being no statutory protection, and the presumption of a final settlement being rebutted, the court refused to open the account after a great lapse of time, when it was probable that most of the parties were dead, and the vouchers and receipts were lost. I do not think that the proof in this case brings it within the rule of the Neilley Case, and that it can be said that there is an actual, continuing, and subsisting trust still in being which would preclude the executor from pleading the statute of limitations.

It has been said that after a ward becomes of age the fiduciary relation of guardian and ward ceases, and the parties are in the relation of debtor and creditor, and hence the claim of the ward may fall within the statute. Busw. Lim. 474. In the administration of trusts the rule is well established that as between trustee and cestui que trust, so long as that relation exists, the trust cannot be affected by the statute of limitations; but where the relation is

no longer admitted to exist, or time and long acquiescence have obscured the nature and character of the trust, or the acts of the parties or other circumstances give rise to presumptions unfavorable to its continuance, courts of equity will refuse relief upon the ground of lapse of time and inability to do complete justice between the parties. The equitable principle upon which the rule is founded has been stated that, "If a trustee is in possession, and does not execute his trust, the possession of the trustee is the possession of the cestui que trust; and, if the only circumstance is that he does not perform his trust, his possession operates nothing as a bar, because his possession is according to his title." Hovenden v. Annesley, 2 Schoales & L. 633; Busw. Lim. 457. The doctrine that a positive and technical trust is not barred by the lapse of time is subject to two qualifications, viz.: that no circumstances exist to raise the presumption from lapse of time of an extinguishment of the trust, and that no open denial or repudiation of the trust is brought home to the knowledge of the parties in interest which requires them to act as upon an asserted adverse title. Lapse of time without any claim or admission of an existing right, coupled with circumstances tending to show that a trust had been executed, may raise a presumption of its execution, and, in case of a guardian, may authorize the court to require a less specific statement of items, and raise a presumption of payment to and for the ward to the amount of the account. Gregg v. Gregg, 15 N. H. 190; Whedbee v. Whedbee, 58 N. C. 392; In re Barker, 1 Power, 480, 24 N. Y. Supp. 723.

The petitioner made no claim against the guardian during the 8 years after she arrived at the age of 21 years. His death then occurred, and for more than 13 years thereafter she failed to make a claim against his estate; and, unless the statute could be pleaded as a bar in a case of this kind, it is difficult to conceive of one wherein it would be proper. She testifies that she did not know of the guardian's death until the fall of 1900. If that be true, then for upwards of 22 years after she became 21 years of age she permitted and intended to permit the acts and doing of the guardian to remain unchallenged. It is true that the guardian failed to file annual statements, as it was his duty to file them, under chapter 460, Laws 1837, yet, so great a length of time having elapsed since the petitioner arrived at age and since the death of the guardian, it may well be inferred that any evidence of payment may have been long since lost or destroyed. This is a special proceeding. Sections 414, 3333, 3334, Code Civ. Proc. The rule of limitations applicable thereto is the same as if it were a civil action. Church v. Olendorf (Sup.) 3 N. Y. Supp. 557. As to legacies not charged upon land, distributive shares of estates, and debts owing by decedent, the statutes give a concurrent remedy to legatees, creditors, and next of kin in courts of law and equity, and in the surrogate's court; and as the statute of limitations is a bar at law it is also a bar in the surrogate's court or in a court of equity. McCartee v. Camel, 1 Barb. Ch. 466; Paff v. Kinney, 1 Bradf. Sur. 1; Clark v. Ford, 1 Abb. Dec. 359; In re Rogers' Estate, 153 N. Y.

316, 47 N. E. 589. I think, upon the facts as they appear in this case, that after the ward became of age the 10-year statute of limitations began to run (In re Rogers' Estate, 153 N. Y. 316, 47 N. E. 589), and at the time of the commencement of these proceedings was an effectual bar in her pathway to a recovery (In re Boylan's Estate, 25 Misc. Rep. 281, 55 N. Y. Supp. 426). The proceedings herein are accordingly dismissed.

Proceedings dismissed.

(86 Misc. Rep. 745.)          In re BAREFIELD.

(Surrogate's Court, Kings County. January, 1902.)

**1. GIFT—DEPOSIT IN BANK—ESTOPPEL.**

A mother gave her only daughter an order directing a savings bank to pay a deposit therein. After the mother's death the daughter drew the deposit out, as administratrix, without producing the order or mentioning the gift. *Held* not to make her chargeable with the money, as belonging to the estate.

**2. DEPOSIT IN BANK—JOINT TENANCY.**

Where a mother and daughter deposit their money in a savings bank in their joint name, on the death of the mother the daughter is entitled to the deposit, as the survivor of a joint tenancy.

**3. TRUST—EVIDENCE.**

Where a daughter deposited her money in a savings bank in the name of her mother, but retained the bank book and made the deposits for her own convenience, the presumption of a trust was rebutted.